WEEDIN, Commissioner of Immigration, v. CHIN SHARE JUNG.

No. 6890.

Circuit Court of Appeals, Ninth Circuit.

Jan. 9, 1933.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellant.

Hugh C. Todd, of Seattle, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

WILBUR, Circuit Judge.

This is an appeal taken from the order of the District Court for the Western District of Washington granting a petition for a writ of habeas corpus and the order discharging the appellee, Chin Share Jung, entered pursuant thereto. The appellee, hereinafter called "the applicant," applied for admission into the United States at the port of Seattle, Wash., on December 15, 1931, as a citizen thereof, claiming to be a foreign-born son of Chin Loy, who is conceded to be a native-born citizen of the United States. After hearings before a Board of Special Inquiry at Seattle, the Board denied his application for admission upon the ground that the claimed relationship had not been satisfactorily established. His appeal from this decision to the

Secretary of Labor was dismissed, after which he petitioned for a writ of habeas corpus.

■ At the hearing before the board of special inquiry in Seattle the applicant and his alleged father, Chin Loy, appeared and were examined. The deposition of applicant's prior landed alleged brother was taken in Chicago, Ill., where he resided at that time, and is a part of the record in this case. The testimony of the three witnesses agreed in the main as to many intimate details of the home, relationships, ancestral graves, etc. However, during the course of the hearing certain discrepancies between the testimony of the witnesses were developed, and on the basis of these discrepancies the immigration authorities rejected the testimony as to the relationship between the alleged father and son, and held that the applicant had not sustained the burden of proof upon him to show that he is a citizen of the United States, and for that reason directed that he be returned to China. Unless it can be said that the immigration authorities, in thus denying the application for admission, abused the discretion committed to them by statute and acted arbitrarily, the District Court erred in granting the petition and ordering that appellee be discharged. It is well settled that in such cases the conclusions of administrative officers upon issues of fact are invulnerable in the courts, unless it can be said that they could not reasonably have been reached by a fair-minded man, and hence are arbitrary.

■ Some of the major discrepancies relied upon by the examining officers and the Board of Review in Washington, D. C., will be set out.

The applicant testified that, excepting cross-alleys, the houses in his row in Lai Ben village are attached, and that there is no space between his house and the one behind it, and that it would not be possible to put a pencil between said houses, while the alleged brother testified that there are spaces of at least a foot between all the houses in the row, and that a person could pass through at the front and rear of each house in the row.

The applicant said that a pig was never kept in his house, and the alleged father stated that no pig was there when he was last in China in 1922. However, both the alleged father and brother testified in 1925, on the application of Chin Ah Sing, the alleged brother, for admission, that their family had a pig in their home, and in the present case the alleged brother testified that a pig was kept in his father's house when he was there in 1927 and 1928.

The applicant testified that his father had two brothers, one Gim Toom who died in the United States, and one Chin Gin whom he saw seven or eight years ago, and that his uncle Chin Gin has a wife and three children named Park Him, Fon Gay, and Sui Tan who formerly lived in his house in Lai Ben village and moved to the nearby Wah Lok village about four years ago. The alleged father's testimony regarding Chin Gin's family is in substantial agreement with that of the applicant. The record shows that this alleged uncle of the applicant, Chin Gin, testified in February, 1920, that he had two sons Chin Wong and Chin Him, the former of whom was adopted. Neither the applicant nor his alleged father appeared to know that this alleged uncle ever had such a son, natural, or adopted, as Chin Wong. The applicant's alleged brother named this alleged uncle's children as Chin Wong, Chin Him, and Sui Tan. He said that they lived in Lai Ben village, and that he did not know of any such cousins as Fon Gay and Park Him.

The applicant testified that Chin Chu, or Gok Koon, a brother of his paternal grandfather, was living in China; that he saw him during the fifth month of last year; that he has two sons, Dee Ung, or Chin Yim, and Dee Gin, or Chin Shing; that Chin Shing has two sons Yu Gin, about thirteen years old, and Ngui How, about eleven years old; and that he last saw Chin Shing about the middle of the second month of last year. The alleged father testified that Chin Chu, or Gok Koon, died before the applicant was born, and that Chin Shing also died before the applicant was born and left two sons, Fook Kim and Ngui How, and one daughter named Tu Ying. The applicant some time later volunteered a correction, saying that his granduncle, Gok Koon, is dead, and that he never saw him, and that Gok Koon's two sons are also dead.

In regard to his schooling, the applicant when first examined testified that he commenced school when he was eight years old, which would be about 1923 or 1924, in the Nom Chui ancestral hall in Lai Ben village, and studied there three years; that he then attended the Ok Sing school, near Chung On village, about a half li from the head of Lai Ben village, for six years, and left that school about June of 1931. When re-examined some three weeks later, he stated that he had made a mistake in his previous testimony, and that he commenced school in Yu Jik ancestral hall and studied there for one year, and after that

attended the Ok Sing school; that he and his alleged brother, Chin Ah Sing, attended the Ok Sing school together for a time. The alleged brother testified that the applicant attended schools located in the home village only, and that the applicant was attending school in Lai Ben village when he left China in 1925 and also when he was back there in 1927 and 1928; that he never heard that the applicant ever attended the Ok Sing school. He denied that he and the applicant went to the Ok Sing school together, but said they had gone to school together at the Yu Jik ancestral hall from the sixth month in 1924 to the time he left China to come to the United States in 1925.

Another discrepancy is with regard to the wedding of applicant's prior landed alleged brother. Applicant testified that his alleged brother, after his return to China in 1927, built a new house in Yung Doy village before his marriage, and that he was married in this new house; that applicant was present at the wedding, and on that occasion had accompanied his alleged brother from Lai Ben to Yung Doy village, a distance of 30 lis, and had walked all the way there and back, it being impossible to make any part of the trip by boat or train. The alleged brother testified that he was married in September, 1927, at his father's house in Lai Ben village, the applicant being present, and that, after his marriage, he and his wife lived in the same house with the applicant until May, 1928, when he and his wife moved to Yung Doy village; that his house in Yung Doy village was built subsequent to his marriage, and that he moved into said house as soon as it was completed; that, when he took his wife from Lai Ben village to Yung Doy village to live, applicant accompanied them to Yung Doy village, and returned to Lai Ben village in the afternoon of the same day; that Yung Doy village is a little more than two hours' ride by train from Lai Ben village; that he and his wife and the applicant made the trip by train; and that the applicant returned to Lai Ben village from Yung Doy village by train. After the case was reopened some four weeks later, the applicant changed his testimony, and stated that his alleged brother was married in Lai Ben village and then moved to the other village, and that it is a ride of nine hours by train from Lai Ben to Yung Doy.

It will be noted that in some instances the applicant changed his testimony so that the discrepancy disappeared after the applicant and his alleged father had opportunity to talk with each other.

There are other discrepancies in the testimony, but those above mentioned are sufficient to show that the decision of the immigration authorities was neither arbitrary nor capricious.

Order reversed.